**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**JAMES A. WRIGHT,**                                                                         **PLAINTIFF**
**ADC # 142769**

**V.**                        **CASE NO. 4:15-CV-452-BSM-BD**

**STATE OF ARKANSAS, et al.**                                        **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**      **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Chief Judge Brian S. Miller. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection. Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

**II.**      **Background:**

Plaintiff James A. Wright, an Arkansas Department of Correction ("ADC") inmate, filed this case *pro se* under 42 U.S.C. § 1983. (Docket entry #1) Mr. Wright

alleges that on May 3, 2015, while housed at the Grimes Unit of the ADC, Defendant Cullum used excessive force against him.[1] (#9)

Defendant Cullum, the only remaining Defendant, has now filed a motion for summary judgment. (#23) Mr. Wright has not responded to the motion, and the time for doing so has passed. After viewing the evidence in a light most favorable to Mr. Wright, the Court concludes that Defendant Cullum's motion for summary judgment should be granted

**III.   Discussion:**

   A.   Standard for Granting Summary Judgment

In a summary judgment the court rules in favor of a party without the need for a trial. A party is entitled to summary judgment if the evidence, viewed in the light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute as to any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

Here, Defendant Cullum has moved for summary judgment, so he must come forward with evidence showing that there is no real dispute about any fact that is important enough to make a difference in how the case is decided. If he meets this

---

[1] The Court previously dismissed Mr. Wright's claims against Defendants the State of Arkansas and the Arkansas Department of Corrections. (#10)

burden, Mr. Wright must respond by producing evidence that contradicts Defendant Cullum's evidence. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If he does not come forward with enough evidence to show that there is a real dispute, the Court must grant summary judgment in favor of Defendant Cullum, and there will be no trial. *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

    B.    Facts

On May 3, 2015, Mr. Wright was housed in an isolation cell in the Grimes Unit where Defendant Cullum and Corporal Bufford (not a party to this action) conducted "mat call." In routine mat call, for an inmate to receive a mat, he must stand with his back to the door with his hands together behind his back. After he places his hands through the flap, an officer places his hands in restraints. After hands are restrained, a door is opened, the inmate is issued a mat, and the door is closed again. The inmate then again backs up to the door and puts his restrained hand through the flap so that officers can remove the hand restraints. (#23, Ex. 9)

After Mr. Wright was issued a mat and the door was closed, he returned to the door and put his restraints through the flap. (#25) At that time, Defendant Cullum held Mr. Wright's right hand and Corporal Bufford held his hand restraints and inserted the key to remove them. (#23, Ex. 3, 8, 9, 10) Mr. Wright began trying to pull his hands away from the officers; Corporal Bufford managed to retrieve the key from the restraints. (#23, Ex. 8, p.32, #25) Defendant Cullum then sprayed Mr. Wright with chemical spray.

Shortly after Mr. Wright was sprayed, two officers came to Mr. Wright's cell and escorted him to the showers to decontaminate.

Mr. Wright was examined by a nurse both before and after his shower.  (#23, Ex. 8, p. 13 & 23)  The nurse noted no injuries and no respiratory distress.  (#23, Ex. 1)  Mr. Wright was permitted to use his asthma inhaler after his shower and was returned to his cell.

According to Mr. Wright, his wrist was a little swollen; he had a small red mark on his wrist; and he experienced some skin irritation and asthmatic symptoms.  (#23, Ex. 8)  Defendant Cullum issued Mr. Wright a disciplinary, charging him with failure to obey an order of staff.  Mr. Wright was found guilty of the disciplinary.  (#23, Ex. 6)

In his deposition, Mr. Wright testified that he pulled his hand away because Defendant Cullum was bending his wrist and hurting him.  (#23, Ex. 8, p. 9) He explained that he was trying to tell the officers that he was being hurt, but the fan was so loud that they could not hear him.  (#23, Ex. 8, p. 9)  Mr. Wright alleges that it was only after he took a few steps back that Defendant Cullum sprayed Mr. Wright with chemical spray without any warning.  (#9, #23, Ex. 8, p. 12)

According to Defendant Cullum and Corporal Bufford, after Mr. Wright pulled his hands away, Defendant Cullum issued Mr. Wright several orders to "stop resisting, or force will be used," but Mr. Wright refused to comply.  (#23, Ex. 3, 9, 10) In his

deposition, Mr. Wright conceded that the fan was so loud Defendant Cullum could have given him a warning that he did not hear. (#23, Ex. 8, p. 10)

   C.   Analysis

To determine whether qualified immunity applies, the Court must determine "whether the facts alleged or shown, construed in the light most favorable to [Mr. Wright], establish the violation of a constitutional or statutory right," and "whether that constitutional right was clearly established as of [the time of the relevant conduct], such that a reasonable official would have known that [his or her] actions were unlawful." *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014)(quoting *Krout v. Goemner*, 583 F.3d 557, 564 (8th Cir. 2009).

> [W]hen an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment excessive force claims, and if the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff "must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."

*Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014)(quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)).

To prevail on an Eighth Amendment excessive force claim, a convicted prisoner must demonstrate that the defendant used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Blair,* 707 F.3d 984, 990 (8th Cir. 2013). Relevant factors include the need for force, the relationship between the need and the

5

amount of force used, and the extent of injury inflicted. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). "In reviewing Eighth Amendment claims, [the Eighth Circuit] extend[s] wide ranging deference to the judgment and policies of the prison officials who must maintain internal order and discipline in the prisons and who must often make snap decisions in volatile and dangerous situations." *Hickey v. Reeder,* 12 F.3d 754, 758 (th Cir. 1993)(citing *Hudson*, 503 U.S. at 6)). Resolution of the issue turns on the circumstances of the specific incident and the particular prison setting. *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000).

Here, the question is whether Defendant Cullum's use of chemical spray was excessive under the circumstances. We know that "a limited application of [chemical spray] to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force." *Burns v. Eaton*, 752 F.3d 1136, 1139-40 (8th Cir. 2014) (citing *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)). And under current case law, a failure to warn that force will be used, standing alone, will generally not preclude summary judgment in an officer's favor. Generally, there must be other conduct. See, *e.g.*, *Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008)(officer not entitled to summary judgment when he failed to warn that he would use force, but also sprayed inmate with a super-soaker used for riot situations; soaked the entire cell and bedding with spray; and denied inmate shower and clean clothes or bedding for three days, resulting in injury); *Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002)(inmate

6

refused to take a paper form he was not required to take; officer sprayed inmate with a prolonged burst of pepper spray without warning, then slammed inmate onto the floor); *Lawrence v. Bowersox*, 297 F.3d 727, 730, 732 (8th Cir. 2002)(without warning, officer doused two inmates with pepper spray from a MK-46, soaking their face, bodies, and entire cell with spray); *Foulk v. Charrier*, 262 F.3d 687, 692 (8th Cir. 2001)(over-medicated inmate in infirmary was awakened, ordered to stand spread-eagle, and sprayed with chemical agent without warning for refusing to eat; was sprayed a second time without warning, even though complying; then, not allowed to shower for days).

Here, accepting Mr. Wright's version of the facts given in his deposition, Defendant Cullum bent Mr. Wright's wrists at an awkward angle, then sprayed him with chemical spray when Mr. Wright pulled his hands away.  Even assuming that is true, it is undisputed that Mr. Wright was apparently resisting the removal of the hand restraints; he was not following protocol; and he was not allowing the officers to retrieve the restraints when he pulled back.  Although Mr. Wright argues that he did so only because Defendant Cullum was bending his wrist at an awkward angle, he admits that Officer Cullum might not have heard him complain that he was in pain due to the noise of the fan.

The ADC administrative regulation in force at the time authorized the use of force, including chemical agents, to maintain order, discipline, and compliance with orders. (#23, Ex. 11 & 12)  Accordingly, a reasonable officer in Defendant Cullum's shoes could have perceived Mr. Wright's action of pulling away from the door as a form of resistance

that warranted the use of force to restore discipline and maintain control. See *Johnson v. Blaukaut*, 453 F.3d 1108, 1114 (8th Cir. 2006)(Gruender, J., concurring)(quoting *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993))("Our review of the law shows that summary application of force are constitutionally permissible when prison security and order . . . has been placed in jeopardy.") There is no dispute that, shortly after the incident, Mr. Wright was taken to the showers to decontaminate and was taken to see a nurse both before and after his shower to mitigate any of the damage done by the chemical spray.

  Mr. Wright alleges that Defendant Cullum acted maliciously and sadistically to harm him because Mr. Wright had complained about Defendant Cullum to Captain Rogers and Sergeant Baker (not parties in this lawsuit) in March or April of 2015 for failing to properly search through incoming inmate mail. (#23, Ex. 8, p. 5-6, #25) Mr. Wright assumes that Defendant Cullum must have learned about his confidential complaint, but there is no evidence, beyond Mr. Wright's speculation, that Defendant Cullum knew about the complaint. Mr. Wright's belief that Defendant Cullum was acting maliciously is purely speculative.

  Mr. Wright also argues that Defendant Cullum should have warned him before spraying him. The facts are in dispute as to whether Defendant Cullum warned Mr. Wright that he would use force. For purposes of this summary judgment motion, the Court has assumed that Defendant Cullum did not warn Mr. Wright. Even according to Mr. Wright's version of the facts, however, there is no indication that Defendant

Cullum's use of force was excessive or done for any reason other than to maintain control and discipline.

Under the circumstances Defendant Cullum faced at the time of the incident, his use of chemical spray when Mr. Wright was apparently resisting does not amount to an excessive use of force, even if Defendant Cullum did not issue a warning. Furthermore, if, in hindsight, spraying Mr. Wright was excessive, it was not clearly established law at that time that the limited use of chemical spray against an inmate, who was apparently resisting, was unconstitutional. Accordingly, Defendant Cullum is entitled to qualified immunity.

**IV.    Conclusion:**

The Court recommends that Defendant's motion for summary judgment (#23) be GRANTED. Mr. Wright's claims under 42 U.S.C. § 1983 against Defendant Cullum should be DISMISSED with prejudice.

DATED this 26th day of April, 2016.

_____
UNITED STATES MAGISTRATE JUDGE